**FILED**

OCT 6 - 2005

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>G.S. SMITH and PLAINS MANUFACTURING, LTD.,<br><br>    Debtors. | Chapter 11<br><br>Case No. 0-04-bk-00683-EWH |
| PHOENIX PROCESS EQUIPMENT CO.,<br><br>    Plaintiff,<br><br>v.<br><br>GORDON SLOAN SMITH and PLAINS MANUFACTURING, LTD.,<br><br>    Defendants. | Adv. No. 04-00036<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

Debtor Gordon Sloan Smith ("Smith") presented plaintiff Phoenix Process Equipment Co. ("Phoenix Process") with financial statements which contained material omission and/or misrepresentations. Phoenix Process relied on the financial statements in financing over $500,000 of a sale of mining equipment ("Equipment) to Plains Manufacturing, Ltd. ("Plains"). Smith personally guaranteed the obligation.

Considering all the circumstances surrounding the transaction, the failure of Phoenix Process to do anything to independently verify Smith's credit worthiness was not reasonable. Accordingly, Phoenix Process cannot prevail on its non-dischargeability complaint. The reasons for my conclusion are set forth in more detail below.

**FACTS AND PROCEDURAL HISTORY**

In July of 2001, Phoenix Process sold the Equipment to Plains for $512,790.00. Phoenix Process financed the purchase price which was due, in full, with interest, six months after the purchase date. Initially, Plains sought to purchase and finance the Equipment without obligating anyone else on the debt. However, when Phoenix Process was unable to obtain a Dun & Bradstreet report for Plains, Smith was asked to personally guarantee the financing and to submit a personal financial statement. The financial statement listed Smith's net worth at approximately $8 million. (Exhibit "A" to the Complaint and Trial Exhibit "2"). Approximately $6 million of Smith's net worth was comprised of an investment in Morgan Auto Parts. Id. At the time that Smith submitted his financial statement, his investment and/or ownership in Morgan Auto Parts was disputed by the party who had allegedly transferred an interest in Morgan Auto Parts to Smith. Smith failed to inform Phoenix Process about that dispute.

Plains failed to pay the deferred purchase price for the Equipment and, on December 23, 2002, Phoenix Process obtained a judgment in Jefferson County, Kentucky Circuit Court against Smith and Plains in the amount of $512,790.00.

2

Thereafter, Smith and Plains each filed voluntary Chapter 11 bankruptcy petitions in this court. Prior to the filing of the bankruptcy petitions, Phoenix Process recovered the Equipment and resold it for a net amount of $79,212.16, leaving a balance due, as of October 27, 2004, of approximately $433,577.84 plus accruing interest (the "Deficiency Judgment Amount").

On August 12, 2004, Phoenix Process filed its Complaint to Determine Dischargeability of Debt Under 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B) (the "Complaint") seeking to have the Deficiency Judgment Amount excepted from Smith's and Plains' discharges.[1] Phoenix Process claimed that, in obtaining the financing for the Equipment, Smith represented both "verbally and in writing" that he was worth approximately $8 million. The Complaint alleges that the financial statement submitted by Smith misrepresented the nature and value of Smith's interest in Morgan Auto Parts and that Phoenix Process relied on the existence and value of that interest in extending credit to Plains.

On October 29, 2004, Phoenix Process filed a Motion for Summary Judgment. On February 15, 2005, after oral argument, I granted partial summary judgment to Phoenix Process, finding that Smith's representations regarding his financial condition were materially false because he did not disclose the contested nature of his interest in Morgan Auto Parts and that Smith intended to deceive Phoenix Process by not disclosing the

---

[1] Plains would only be entitled to a discharge if it confirmed a non-liquidating Plan and continued to engage in business. See 11 U.S.C. § 1141(3).

3

dispute about that interest. However, I found that evidence would have to be presented on the issue of Phoenix Process' reasonable reliance on Smith's misrepresentations. The minutes of the February 15th hearing do not indicate whether partial summary judgment was granted under 11 U.S.C.§ 523(a)(2)(A) or § 523(a)(2)(B).

On February 21, 2005, I entered an order submitted by Phoenix Process' counsel granting partial summary judgment on "each of the elements of the plaintiff's common law fraud claim, with the exception of reasonable reliance." A trial was held on May 19, 2005 solely on the issue of whether Phoenix Process' reliance upon Smith's misrepresentation was reasonable. Counsel elected to submit their closing arguments by submitting briefs. Thereafter, Smith's counsel withdrew. New counsel was retained on July 21, 2005. Closing briefs were submitted on September 16, 2005. The matter is now ready for decision.

### ISSUES

1. Does Phoenix Process' claim fall under § 523(a)(2)(A) or § 523(a)(2)(B)?
2. Did Phoenix Process' reliance on Smith's financial statements fall within the applicable reliance standard under § 523?

### JURISDICTIONAL STATEMENT

The court has jurisdiction over the Complaint under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409 (a).

4

# DISCUSSION

## A. The Reliance Standard in § 523(a) Discharge Cases

A creditor's reliance on a debtor's statements is measured by different standards, depending on which section of § 523(a) is alleged in the non-dischargeability complaint. A claim brought under § 523(a)(2)(A) for "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition", requires that the creditor's reliance be justifiable. Field v. Mans, 516 U. S. 59, 61, 116 S. Ct. 437, 133 L.Ed2d 351 (1995). Justifiable reliance requires an inquiry into the characteristics of a particular plaintiff and the circumstances of a particular case. Id. It is a subjective standard in which the court considers the knowledge and relationship of the parties. In re Tallant, 218 B.R. 58, 67 (9th Cir. B.A.P. 1998).

A claim brought under § 523(a)(2)(B) for "use of statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and (iv) that the debtor causes to be made or published with intent to deceive" is subject to the stricter standard of reasonable reliance. In re Kidd, 219 B.R. 278, 282 (Bankr. D.Mont. 1998). Reasonable reliance is a more exacting standard than justifiable reliance. Reasonable reliance focuses on whether reliance would have been reasonable to the hypothetical average person. Id. at 283 citing 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, § 523.08[1][d] (15th ed. 1997).

The investigation into whether a creditor's reliance was reasonable under § 523(a)(2)(B) requires the court to consider all the circumstances surrounding the transaction, including whether the creditor followed its normal business practices in investigating a borrower's credit, whether there was a previous course of dealing between the creditor and the borrower, and whether, during the course of negotiations, so called "red flags" appeared, which should have put the creditor on notice that a deeper investigation of the borrower's financial condition should be undertaken. In re Osborne, 257 B.R. 14, 21 (Bankr. C.D. Calif. 2000); In re Gertsch, 237 B.R. 160, 170-171 (9th Cir. B.A.P. 1999). Industry standards for granting credit in a similar situation, while relevant, are "merely a guideline, and not an element that must be proven before reliance can be said to be reasonable." Gertsch, 237 B.R. at 170.

B. Reliance Standard Applicable in this Case

The parties disagree about which reliance standard applies in this case and, unfortunately, the record is of little help. It is clear, however, that subsections § 523(a)(2)(A) and (B) are mutually exclusive. Statements regarding a debtor's financial condition are expressly excluded from the reach of § 523(a)(2)(A) and are only actionable under § 523(a)(2)(B). In re Folsom, 2002 WL 32001419 (Bankr. C.D. Ill. 2002).

The minute entry for the hearing regarding Phoenix Process' Motion for Summary Judgment held on February 15, 2005 does not reference the applicable section of § 523 under which partial summary judgment was granted. It does refer to setting a trial on the "reasonable reliance issue." On February 21, 2005, an order granting partial summary

6

judgment was submitted by Phoenix Process, which states that partial summary judgment is granted against the Debtors "on each of the elements of the Plaintiff's common law fraud claim, with the exception of the element of reasonable reliance." While the reference to "common law fraud" is a § 523(a)(2)(A) claim, as discussed earlier, reasonable reliance is the standard for measuring a creditor's reliance under § 523(a)(2)(B). Therefore, it is unclear whether Phoenix Process was granted partial summary judgment under § 523(a)(2)(A) or (B). However, a review of Phoenix Process' Complaint and Motion for Summary Judgment demonstrates that its objection to discharge is based on Smith's statements regarding his personal financial condition. Phoenix Process' claim, therefore, is a § 523(a)(2)(B) claim governed by the reasonable reliance standard.[2]

C. <u>Application of the Reasonable Reliance Standard in this Case</u>

Phoenix Process bears the burden of proof by a preponderance of the evidence that it reasonably relied on Smith's statements regarding his financial condition. <u>Grogan v. Gardner</u>, 498 U.S. 279, 291, 11 S. Ct. 654, 661, 112 L.Ed. 775 (1991). Exceptions to discharge are to be strictly construed in favor of the debtor in order to effectuate the fresh start policy of the Bankruptcy Code. <u>In re Riso</u>, 978 F.2d 1151, 1154 (9th Cir. 1992).

The testimony of Phoenix Process' witnesses was that the transaction as proposed by Plains, in which it was to be the sole borrower, immediately raised concerns when no Dun and Bradstreet reports were available for Plains. Those witnesses testified that they

---

[2] In order to clarify the record, an amended order will be entered pursuant to Rule 9024 granting Phoenix Process partial summary judgment under § 523(a)(2)(B).

7

routinely rely on such reports in extending credit to corporate purchasers of equipment. Therefore, from almost the beginning of the parties' dealings, the proposed purchase and financing of the Equipment by Plains was not routine. Furthermore, there was no history of previous dealings between Phoenix Process and the Debtors on which Phoenix Process could rely in deciding to extend credit. This was a brand new transaction with a corporation with no track record and insufficient assets to pay for the Equipment. As a result, Phoenix Process demanded a personal guarantee from Smith.

As part of the demand for Smith's guarantee, Phoenix Process required Smith to submit financial statements and provide outside credit references. Smith responded to the request for a personal financial statement by submitting an unsigned compilation report ("Compilation Report") prepared by a certified public accountant (CPA). He responded to the request for outside references by providing names of individuals or companies who had done business with Smith or one of his companies.[3]

Phoenix Process' witnesses testified that even though they were aware that the Compilation Report was significantly different from an audited financial statement, they felt they could rely on the Compilation Report because it was prepared by a CPA. However, the unsigned cover letter, which accompanied the Compilation Report, included the following statement:

> "A compilation is limited to presenting in the form of financial statement information that is the representation of Mr. Smith whose financial

---

[3] According to Smith's schedules, he is the alter ego of a number of corporations.

statements are presented. I have not audited or reviewed the accompanying statement of financial condition and accordingly do not express an opinion on any other form of assurance on it."

The letter then notes that there is at least one departure from generally accepted accounting principles in the statements in terms of how the asset values were presented. Instead of presenting the assets at current estimated values, the assets were listed at a cost value. If the fact that there were no Dun and Bradstreet reports available for Plains was not a red flag, the CPA's unsigned cover letter explaining the limits of the Compilation Report and how the assets were valued should have alerted Phoenix Process that a further investigation of Smith was required. However, other than calling the credit references submitted by Smith, Phoenix Process did nothing to <u>independently</u> check Smith's credit worthiness. No call was made to the CPA, no effort was made to independently confirm the existence of any of the assets listed on the Compilation Report and, most significantly, no independent credit report was obtained on Smith.

When there is evidence of material, fraudulent statements, little investigation is required for a creditor to have reasonably relied on the representation. See <u>In re Gosney</u>, 205 B.R. 418, 421 (9th Cir. B.A.P. 1996), <u>In re Candaland</u>, 90 F.3d 1466 (9th Cir. 1996), <u>In re Lansford</u>, 822 F.2d 902, 904 (9th Cir. 1987). However, little investigation does not mean no independent investigation. Some independent investigation should be undertaken for a creditor to satisfy the reasonable reliance standard under § 523(a)(2)(B). Otherwise, there would be no difference between the justifiable and the reasonable reliance standards, an outcome which would be contrary to the Supreme Court's holding in <u>Field v. Mans</u>.

9

Ninth Circuit decisions, which have interpreted the reasonable reliance standard involved cases where the creditor requested and received information independent from what was provided by the borrower. For example, in <u>Gosney</u>, the creditor obtained a loan package which included employment verification, bank statements and IRS tax returns. 205 B.R. at 419. In <u>Lansford</u>, the creditor ran an independent check of real estate records. 822 F.2d at 904. In <u>Candaland</u>, the creditor reviewed a credit report "to assure that there were no outstanding judgments and to assure that the applicant was in a position to repay debts." 90 F.3d at 1468. <u>See also</u> In re Gertsch, 237 B.R. 160, 171 (9th Cir. B.A.P. 1999) (creditor reviewed cash flow analysis, pro forma income statement, tax returns and <u>credit reports</u>).

Phoenix Process argues in its post-trial brief that three separate visits to the Plains' mining site and calls to Smith's references satisfied its obligations to investigate the Debtors. It is clear, however, from the testimony of Phoenix Process' witnesses, that Phoenix Process was not relying on Plain's successful mining operation in extending credit, but on Smith's guarantee. However, in investigating Smith's representations, Phoenix Process only called people named by Smith himself to verify his credit.

Phoenix Process was a sophisticated lender extending a significant amount of credit in a business transaction. Considering the totality of the circumstances surrounding the transaction, I find that Phoenix Process did not "take reasonable steps to inquire as to the credit worthiness" of Smith. <u>Gertsch</u>, 237 B.R. at 172 (citing <u>Gosney</u> 205 B.R. at 421). Phoenix Process has failed to demonstrate by a preponderance of the evidence that it

10

reasonably relied on Smith's misstatements regarding his financial condition. Accordingly, it is not entitled to a non-dischargeability judgment against the Debtors.

## CONCLUSION

The foregoing constitute my findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. Judgment for the Debtors will be separately entered this date.

DATED this 6th day of October, 2005.

EILEEN W. HOLLOWELL
United States Bankruptcy Judge

Copy of the foregoing mailed this
6th day of October, 2005, to:

Alan A. Meda
Mark H. Candioto
Stinson Morrison Hecker LLP
1850 North Central Ave. #2100
Phoenix, AZ 85004-4584

Gordon Sloan Smith
Plains Manufacturing, Ltd.
Desert Gardens Airport Way #4
POB 2601
Quartzsite, AZ 85346

Janessa Erin Koenig
Jaburg & Wilk, P.C.
3200 N Central Avenue, Suite 2000
Phoenix, AZ 85012

By_____
Judicial Assistant